## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02368-MSK-NYW

DONALD BERNHARDSEN, and
CARLOS GALVIS,

    Plaintiffs,

v.

WESTERN ELECTRICITY COORDINATING COUNCIL,
a Utah corporation,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This civil action is before the court on the Parties' Joint Motion for Approval of Settlement Agreement ("Joint Motion for Approval"). [#10, filed January 6, 2016]. This civil action was referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated October 26, 2015 [#4] and the memorandum dated January 6, 2016 [#11]. For the reasons stated herein, I respectfully **RECOMMEND** that the Joint Motion for Approval be **GRANTED**.

### BACKGROUND

Plaintiffs initiated this lawsuit on October 26, 2015, by filing a Complaint asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") and the Washington Minimum Wage Act, RCW §49.46.005, *et seq.*, and a claim for breach of contract, resulting from Defendant Western Electricity Coordinating Council's ("Defendant" or "WECC") alleged failure to pay "time and one-half" premium pay for all overtime hours worked. [#1].

Plaintiffs, who sought to recover damages and backpay, are former employees of WECC who worked for Defendant in the State of Washington. *Id.* As Reliability Coordinator System Operators, Plaintiffs were responsible for regulating the transmission of bulk electricity among North American utilities, which they achieved through the operation of computer equipment located at WECC's offices. [*Id.* at ¶ 7]. Plaintiffs allege that they worked overtime hours for WECC; WECC failed to pay all overtime compensation due under state and federal law; and, instead, WECC counted additional hours worked in an overtime workweek as hours worked in a non-overtime workweek. [*Id.* at ¶ 8]. As a result, WECC avoided paying an overtime rate for those additional hours worked. *Id.*

This court set a Scheduling Conference for December 16, 2015. [#6]. Plaintiffs subsequently filed a Motion to vacate the Scheduling Conference, representing that although Defendant had not yet been served, the Parties had reached a settlement in principle and anticipated dismissing the action with prejudice. [#7]. This court therefore vacated the Scheduling Conference and reset it for January 21, 2016.[1] [#9]. The Parties thereafter filed the Joint Motion for Approval seeking approval of their executed Settlement Agreement, which resolves the FLSA and state law claims asserted against Defendant. [#10].

After reviewing the Joint Motion for Approval, this court issued a Minute Order directing the Parties to supplement the Motion with certain information necessary, and omitted from the Motion and the Complaint, to allow the court to determine whether a *bona fide* dispute exists. [#12]. The Parties filed a Supplement on January 14, 2016. [#13].

---

[1] This court subsequently reset the Scheduling Conference to March 15, 2016. *See* [#12].

## ANALYSIS

Within the context of a lawsuit brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations, and upon consideration of a proposed settlement for fairness, the district court may enter a stipulated judgment approving the agreement and dismissing the action. *Baker v. Vail Resorts Management Co.*, No. 13–cv–01649–PAB–CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982)). To approve the settlement agreement, the court must find that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker*, 2014 WL 700096, at *1 (citing *Lynn's Food Stores,* 679 F.2d at 1354).

**I.** *Bona Fide* **Dispute**

For the court to discern whether a *bona fide* dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Baker*, 2014 WL 700096, at *1.

Defendant has not yet responded to the Complaint, and the Parties frame the questions presented by the lawsuit as follows: did WECC pay all overtime pay owed to Plaintiffs; was WECC entitled to offset any unpaid overtime; what is the appropriate statute of limitations; what amount of backwages is due; is WECC liable to Plaintiff for statutory liquidated damages if it

indeed failed to pay all overtime pay; is WECC liable under Washington state law in addition to any penalty under the FLSA? [#10 at ¶ 3]. *See Baker*, 2014 WL 700096, at *1 ("The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement") (citing *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008)). Plaintiff's Complaint and the Parties' Joint Motion for Approval satisfy the first, second, and fourth criteria listed above.

In their Supplement, the Parties informed the court that the issues in this case were previously litigated in *Cartier v. Western Electricity Coordinating Council*, Case No. 1:14-cv-00079-WJM-MJW (D. Colo. Oct. 28, 2015), which was an opt-in collective action involving eighteen former WECC employees. [#13 at 2]. *Cartier* was resolved upon the approval of the parties' settlement agreement by the Honorable William J. Martinez, following the court's ruling on cross motions for summary judgment. [*Id.*] *Cartier*, 1:14-cv-00079-WJM-MJW, [ECF. 61, 74]. Plaintiffs here were eligible to participate in the *Cartier* action but missed the opt-in deadline. [#13 at 2]. They thereafter filed the present action, which the Parties represent "arises out of the same factual predicate as *Cartier*," and as a result of *Cartier*, "the issues in the present lawsuit have been well framed and analyzed, which enabled Plaintiffs and WECC to negotiate settlement at a very early stage." [*Id.*]

The Parties further explained in their Supplement that WECC had acknowledged that some of Plaintiffs' overtime hours had not been compensated consistent with the *Cartier* summary judgment ruling, and WECC had produced a summary of Plaintiffs' pay records and WECC's estimate of the overtime owed consistent with that ruling. [#13 at 4; #13-1]. Plaintiffs agreed with WECC's calculations for overtime owed, but argued "1) the statute of limitations

4

period was longer than assumed by WECC; 2) Plaintiffs were entitled to liquidated damages under the FLSA (*i.e.*, double the amount owed); and 3) Plaintiffs' [sic] were entitled to recover their incurred attorneys' fees and costs." [#13 at 4]. The Parties subsequently negotiated a payment of $3,113.06 to Plaintiff Bernhardsen, a payment of $5,374.64 to Plaintiff Galvis, and a payment of just over $5,000 for attorney's fees and costs. The Parties represent that the overtime payments are based on estimated damage figures but are intended to exceed the full amount of damages Plaintiffs could recover under the FLSA. [*Id.*] Based on the information that the Parties have provided through the Complaint, the Joint Motion for Approval, and the Supplement, this court finds that a *bona fide* dispute led to the negotiation and settlement terms.

**II.      Fair and Equitable Settlement Agreement**

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Baker*, 2014 WL 700096, at *2. The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and lowest paid...employees who lack[ ] sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945). *See also Christopher v. SmithKline Beecham Corp.,* 132 S.Ct. 2156, 2162 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours.") (citation omitted). "Normally, a settlement is approved where it is the result of "contentious arm's-length negotiations, which were undertaken in good faith by counsel…and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief...." *Felix v. Thai Basil at Thornton, Inc.*, No. 14–cv–02567–MSK–CBS, 2015 WL 2265177, at *2 (D. Colo. May. 6, 2015) (citation

omitted). The Tenth Circuit considers the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). *See also Albu v. Delta Mechanical Inc.*, No. 13–cv–03087–PAB–KMT, 2015 WL 4483992, at *3 (D. Colo. June 30, 2015) ("Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed.R.Civ.P. Rule 23(e) (citations omitted)).

Under the terms of the Settlement Agreement, Defendant agrees to pay Plaintiffs the gross amount of $13,500.00 ("Settlement Fund"), of which Plaintiff Bernhardsen will retain $3,113.06 and Plaintiff Galvis will retain $5,374.64. [#10-1 at 5, 6]. The remaining $5,012.30 would be paid to Plaintiffs' counsel for fees and costs. The Parties represent that they have "conducted sufficient discovery in this matter to determine the amounts owed to Plaintiffs" and "[b]ased upon WECC's defenses, the proposed settlement is an appropriate compromise that fairly and fully compensates Plaintiffs." [#10 at ¶ 4]. Plaintiffs' counsel represents that the settlement reached for Plaintiffs "constitute[s] the entirety of backwages and liquidated damages that they could recover under the FLSA if they were to proceed to trial without any reduction for attorney's fees and/or costs." *Id.* Furthermore, the Settlement Agreement does not contain a confidentiality provision and does not require Plaintiffs to prospectively waive any FLSA rights. *Id.* The Parties attached to the Supplement WECC's estimate of the overtime owed, which

6

specifies the number of hours at issue, the normal compensation for those hours, and the proposed overtime compensation. [#13-1]. This court finds that the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation, and further finds that the settlement is fair and reasonable.

### III.     Attorney Fees

Finally, this court considers whether the amount provided for in the Settlement Fund for Plaintiffs' attorney's fees, $5,012.30, is reasonable. The Parties assert that Plaintiffs' recovery was addressed independently in the Settlement Agreement, and the reasonableness of such recovery was not influenced by the issue of attorney's fees. [#10 at ¶ 4]. However, this court must conduct an independent examination of whether the fees are reasonable. *See Silva v. Miller,* 307 F. App'x 349, 351–52 (11th Cir. 2009) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). Courts may determine the reasonableness of a fee request by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The lodestar amount may be adjusted according to the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, or other factors. *See Tallitsch v. Child Support Servs., Inc.,* 926 P.2d 143, 147 (Colo. App. 1996).

Plaintiffs submitted the declaration of their attorney, Brian D. Gonzales, who attests that he has been engaged almost exclusively in wage and hour litigation under the FLSA since early 2008, and that he has been involved in numerous class and/or collective actions relating to

7

employers' failures to pay employees all wages due. [#10-2 at ¶ 3]. He attests that he expended 14.1 hours litigating this matter; and that the proposed award of fees equals a billing rate of $327.11 an hour, which is consistent with the rates in the Denver legal market. [*Id.* at ¶ 10]. For support, Mr. Gonzales attached to his declaration a 2003 summary of nationwide law firm billing rates published by the National Law Journal [#10-5] and a 2010 study of part-time partners at small to large Denver law firms [#10-6]. Mr. Gonzales also attached his curriculum vitae [#10-3] and a dated summary of the billing records related to this matter [#10-4].

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995). In order to satisfy their burden, Plaintiffs must produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). The court may adjust the rates suggested by counsel based on its own familiarity with the range of prevailing rates in the Denver, Colorado market. *Guides, Ltd.*, 295 F.3d at 1079.

In *Cartier v. Western Electricity Coordinating Council,* Judge Martinez found that a fee of $389.02 per hour was reasonable for Mr. Gonzales' work. *Cartier*, No. 14-cv-00079-WJM-MJW, ECF No. 72-2, 74. In a recommendation issued June 30, 2015, another magistrate judge in this District determined that an hourly rate of $300.00 was reasonable in considering Mr. Gonzales' skill and experience. *Albu*, 2015 WL 4483992, at *6, *adopted by* 2015 WL 4467434

(D. Colo. Jul. 22, 2015).  In so finding, Magistrate Judge Tafoya relied on *Mendoza v. Valley Park Apartments, Inc.,* Case No. 13–cv–00002–PAB–KMT, 2014 WL 984687, at *6–7 (D. Colo. March 12, 2014), in which District Judge Philip Brimmer found that $250.00 was a reasonable hourly rate for two Colorado attorneys who regularly represented workers in wage and hour cases and who had seven years of experience practicing in the area of labor law.  Other courts in this District have reached similar conclusions.  *See, e.g. In Horne v. Scott's Concrete Contractor, LLC*, Case No. 12–cv–01445–WYD–KLM, 2013 WL 3713905, at *10 (D. Colo. April 24, 2013) (finding hourly rates of $250.00 and $200.00 as reasonable for this jurisdiction); *Olivares v. UFP Lafayette, LLC*, No. 12–cv–01082–CMA–KLM, 2013 WL 2477124, at *1 (D. Colo. June 10, 2013) (approving $280 hourly rate for lead counsel and $200 hourly rate for associate attorney in FLSA case);  *Chavez v. Excel Services Southeast, Inc.*, No. 13-cv-03299-CMA-NYW, 2015 WL 4512276 (D. Colo. Jul. 27, 2015) (approving award of fees calculated at a rate of $300 an hour). The last Colorado Bar Economic Survey found that the median hourly billing rate for a plaintiff-side employment and labor attorney was $300 per hour, with a mean of $267 per hour.  The Colorado Bar Association: 2012 Economic Survey Snapshot, (2012), http://www.cobar.org/repository/LPM%20Dept/Economic%20Survey/Snapshot%20Final%20Report.pdf.  Given the Parties' explanation that "Plaintiffs in this lawsuit were eligible to participate in the Cartier action, but missed the opt-in deadline, and therefore, filed the present action, which arises out of the same factual predicate as *Cartier*," [#13 at 2], a rate of $327.11 appears appropriate, as it reflects a discount from the rate set by Judge Martinez in *Cartier*, resulting from the work not repeated in this second case.

## CONCLUSION

Upon full consideration of the Motion and all other papers and proceedings herein, this court respectfully **RECOMMENDS** that the Joint Motion for Approval of Settlement Agreement [#10] be **GRANTED**.[2]

DATED: January 20, 2016

BY THE COURT:

s/Nina Y. Wang
United States Magistrate Judge

---

[2] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).